Mark J. Gardberg, Esq.
Nevada Bar. No. 10879
Robert L. Rosenthal, Esq.
Nevada Bar. No. 6476
**HOWARD & HOWARD ATTORNEYS PLLC**
3800 Howard Hughes Parkway, Suite 1000
Las Vegas, Nevada 89169
Telephone: (702) 257-1483
E-Mail Address: mgardberg@howardandhoward.com
                        rrosenthal@howardandhoward.com

*Attorneys for Plaintiffs*

### UNITED STATES DISTRICT COURT

### DISTRICT OF NEVADA

| | |
|---|---|
| CASSANDRA HAZEN, an individual, and PAUL HAZEN, an individual, | Case No: |
| Plaintiffs, | **COMPLAINT** |
| vs. | |
| LUGANO DIAMONDS & JEWELRY INC., a California for-profit corporation; DOES 1 – 10, inclusive; ROE CORPORATIONS 1 – 10, inclusive, | |
| Defendants. | |

Plaintiffs Cassandra Hazen and Paul Hazen ("Plaintiffs" or the "Hazens"), acting by and through their legal counsel, Howard & Howard Attorneys PLLC, hereby bring this action against Defendant Lugano Diamonds & Jewelry Inc. ("Lugano") as follows:

### <u>PARTIES</u>

1.      Plaintiffs Cassandra Hazen and Paul Hazen are, and at all relevant times were, residents of Las Vegas, Nevada.

2.      Upon information and belief, Defendant Lugano is, and at all relevant times was, a California Corporation with its principal place of business in Newport Beach, California.

1

3.     Defendants sued herein under the fictitious names of DOES 1 through 10, inclusive, are presently unknown to Plaintiffs but one or more may be in some respect liable for the acts and omissions, whether intentional, negligent, or otherwise, alleged herein.

4.     Defendants sued herein under the fictitious names of ROE CORPORATIONS 1 through 10, inclusive, are presently unknown to Plaintiffs but may be in some respect liable for the acts and omissions, whether intentional, negligent, or otherwise, alleged herein.

## JURISDICTION AND VENUE

5.     Jurisdiction is proper under 28 U.S.C. §1332(a), because there is complete diversity of citizenship between the parties and the amount in controversy in this action exceeds $75,000, exclusive of costs and interest.

6.     This Court has personal jurisdiction over Defendant based on Defendant's intentional acts aimed at the State of Nevada, namely, (i) committing fraud against Plaintiffs, with the knowledge that Plaintiffs reside in Nevada, and (ii) marketing and selling Defendant's products to customers in the State of Nevada.

7.     The United States District Court located in Las Vegas, Nevada is a proper venue for the adjudication of this dispute pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in Las Vegas, Nevada.

## GENERAL ALLEGATIONS

8.     Lugano, which was formed in 2005 by Mordechai Haim "Moti" Ferder ("Ferder"), is in the business of selling high-end jewelry, including but not limited to diamonds, to the public.

9.     At all relevant times, Ferder was acting as Lugano's Design Director, President Chief Executive Officer ("CEO") and agent.

10.     Lugano has approximately one dozen high-end, ultra-luxury retail boutiques across the United States and internationally, in locations such as Aspen, Palm Beach, and London.

11.     In 2021, a publicly traded company named Compass Diversified Holdings ("Compass") (NYSE: "CODI"), purchased sixty percent (60%) of Lugano for approximately $256,000,000.

12.     Plaintiffs first came into contact with Lugano in 2021, when Ferder, acting on behalf of Lugano as its Design Director, President and CEO, presented himself to Plaintiffs as a

HOWARD & HOWARD ATTORNEYS PLLC

2

one-of-a-kind, award-winning, master craftsman and jewelry expert.

13.    At that time, Plaintiffs were interested in buying a rare pink diamond (the "Pink Diamond"). Acting on behalf of Lugano, Ferder and another Lugano colleague flew to Hawaii to show the Pink Diamond to Plaintiffs, and Plaintiffs subsequently purchased that gem.

14.    Soon thereafter, Ferder, on behalf of Lugano, contacted Plaintiffs multiple times over the course of several months and asked them to participate in an investment program that Lugano was offering to select high-income customers. Lugano's overtures eventually led to Plaintiffs agreeing to enter into three separate written contracts with Lugano (collectively, the "Three Contracts"), whereby the parties agreed to purchase, co-own, and resell high-end, multi-carat diamonds for a "30% – 40% profit." The diamonds referenced in the first and third contracts were all over 20 carats in size.

15.    On or about February 19, 2021, Ferder, acting on behalf of Lugano, entered into the first written contract with the Hazens (the "1st Contract"). Pursuant to the terms of the 1st Contract, Lugano acquired two diamonds from D.N., a third party, one for $1,425,000 and the other for $2,850,000, for a combined purchase price of $4,275,000. Plaintiffs and Lugano each paid fifty percent (50%) of the total purchase price (i.e., $2,137,500). As part of the 1st Contract, Lugano agreed to maintain insurance for the two diamonds in the amount of $3,150,000 and to be solely responsible for safely storing and maintaining the diamonds. The parties further agreed that Lugano would reimburse the Hazens for the full amount of their investment at any time prior to the diamonds being sold, plus nine percent (9%) annual interest.

16.    On or about February 12, 2022, Ferder, on behalf of Lugano, entered into the second written contract with the Hazens (the "2nd Contract"), through Plaintiffs' trust, BBD 2012 Gift Trust ("BBD"). The subject of the 2nd Contract was a 3.30 carat Fancy Vivid Blue diamond (the "Blue"), which Lugano acquired from Novel for a total purchase price of $5,600,000. Lugano and Plaintiffs each paid fifty percent (50%) of the total purchase price (i.e., $2,800,000). As part of the 2nd Contract, Lugano agreed to maintain insurance for the Blue in the amount of $6,400,000 and to be solely responsible for safely storing and maintaining the diamond. As part of the 2nd Contract, the parties further agreed that Lugano would reimburse the Hazens for the full amount

HOWARD & HOWARD ATTORNEYS PLLC

of their investment (i.e., $2,800,000) at any time prior to the diamonds being sold, plus nine percent (9%) annual interest.

17.    On or about January 5, 2023, Ferder, on behalf of Lugano, entered into the third written contract with the Hazens (the "3rd Contract"), with virtually identical terms as the 1st Contract and 2nd Contract. Other than the purchase price and the diamonds themselves, the terms of Three Contracts were the same. In the 3rd Contract, the parties bought two large diamonds from Kothari for a total purchase price of $2,620,000. Plaintiff and Lugano each paid $1,310,000 toward the total purchase price of $2,620,000. Again, the 3rd Contract stated that Lugano would refund the Hazens their money at any time prior to the diamonds being sold, plus nine percent (9%) annual interest.

18.    The Three Contracts between the parties were drafted by Lugano, were delivered by Lugano to the Hazens in Las Vegas, Nevada, and were signed by the Hazens in Las Vegas, Nevada.

19.    In the Three Contracts, Plaintiffs were fifty percent (50%) co-owners of the specified diamonds with Lugano.

20.    In the Three Contracts, each diamond was described via a specific, unique GIA certification number, as well as by carat size, color, clarity rating, and so forth (the "Co-Owned Diamonds"). Additionally, Lugano provided Plaintiffs with the "GIA Certificate" relating to each of the Co-Owned Diamonds.

21.    Given the terms and conditions contained in the 2nd Contract and 3rd Contract, which were drafted by Lugano, the Co-Owned Diamonds were not to be purchased following the parties' entry into those agreements; instead, the Co-Owned Diamonds were already in Lugano's inventory. Further, pursuant to the 2nd Contract and 3rd Contract, Defendant represented and warranted that the relevant "Diamond was bought" from a specific third-party vendor (i.e., Novel and Kothari).

22.    According to all Three Contracts, the Co-Owned Diamonds were not acquired at fair market value; rather, each of the Three Contracts stated that Defendant acquired them at "35%-40% below the wholesale market value for a diamond of similar specifications."

HOWARD & HOWARD ATTORNEYS PLLC

HOWARD & HOWARD ATTORNEYS PLLC

23.     Each of the Three Contracts stated that Defendant would market the Co-Owned Diamonds to third-party customers, with the aim of realizing a sale within "a [sic] approximate [sic] 6-12 month timeframe." Further, after each Co-Owned Diamond was sold, Defendant would then tender fifty percent (50%) of the net profit to the Hazens.

24.     Each of the Three Contracts between the Lugano and the Hazens stated that Plaintiffs' anticipated profit would be "30-40% or greater," representing the difference between (i) the below-market price Defendant had already paid for the Co-Owned Diamonds; and (ii) the market price that Defendant would then be charging. The Three Contracts also provided that, if it turned out that the Co-Owned Diamonds were of lesser value than represented or they failed to sell within the one-year timeframe, then Defendant "assume[d] the risk" of either such scenario and would return the Plaintiffs' full investment in cash, together with interest, as stated above.

25.     Each of the Three Contracts between the parties contained the following additional material terms: (i) until the sale of each Co-Owned Diamond, Defendant would grant Plaintiffs access to the diamonds upon request; (ii) until the sale of each Co-Owned Diamond, Defendant would be solely responsible for maintaining, storing, insuring, and appraising those stones; and (iii) following each sale of a Co-Owned Diamond, Defendant would provide Plaintiffs with "access to all Transaction Paperwork."

26.     On or around December 11, 2021, Defendant told Plaintiffs the diamonds in the 1st Contract sold as anticipated for $3,900,000 and sent Plaintiffs their promised fifty percent (50%) net profit.

27.     Defendant satisfied the terms and conditions contained in the 1st Contract in order to give the Hazens a false sense of trust and to induce them into entering into the 2nd Contract and 3rd Contract, which Defendant never intended to honor.

28.     On or about February 16, 2022, Plaintiffs wired $2,800,000 to Lugano in accord with the terms of the 2nd Contract.

29.     Plaintiffs complied with all of the terms of the 2nd Contract.

30.     On or about January 6, 2023, Plaintiffs wired $1,310,000 to Lugano in accord with the terms of the 3rd Contract.

31. Plaintiffs complied with all of the terms of the 3rd Contract.

32. Defendant breached the terms of the 2nd Contract and 3rd Contract.

33. Throughout 2023 and much of 2024, Defendant kept assuring Plaintiffs that the Co-Owned Diamonds listed in the 2nd Contract and 3rd Contract would be imminently sold.

34. By July 22, 2024, Defendant had still failed to sell the Co-Owned Diamonds in the 2nd Contract and 3rd Contract. The 6-12 month sale periods described both contracts had now exceeded 18½ and 29 months, respectively.

35. On July 22, 2024, Plaintiffs advised Lugano that they wanted their money back, plus the nine percent (9%) interest, in compliance with the terms of the 2nd Contract and 3rd Contract.

36. In response, Ferder, acting on behalf of Lugano promised to call Plaintiffs the next day, but he never did.

37. Over the course of the next 9½ months, the Hazens continued to demand that Lugano repay them their money and interest, but Lugano either ignored their demands or kept stalling for time.

38. By May 9, 2025, Plaintiffs' patience was at an end and they told Defendant that they were worried that Defendant would not comply with the terms of the 2nd Contract and 3rd Contract. Three days later, on May 12, 2025, Ferder claimed that he had resigned from Lugano and that the company had appointed somebody to deal with the parties' 2nd Contract and 3rd Contract. Ferder insisted that Lugano would repay Plaintiffs their money.

39. On or around May 7, 2025, Compass filed a Form 8-K with the SEC, which stated that Ferder had resigned as Lugano's CEO. The Form 8-K also said that Compass' Audit Committee hired outside legal and accounting firms to investigate Lugano's "financing, accounting, and inventory practices," given "certain unrecorded financing arrangements and irregularities identified in sales, cost of sales, inventory, and accounts receivable." Additionally, Compass took the extraordinary measures of (i) advising its shareholders and the market not to rely upon Compass' 2024 consolidated financial statements, earnings statements, and other related documents; (ii) canceling its next earnings conference call; (iii) delaying its 10-Q

HOWARD & HOWARD ATTORNEYS PLLC

Quarterly Report; and (iv) postponing its regularly scheduled 2025 annual meeting of stockholders.

40.     Following the discovery of these events, on May 21, 2025, Plaintiffs demanded that Lugano repay their money by June 2, 2025, or they would sue.

41.     Lugano failed to comply with Plaintiffs' demand for repayment.

42.     Shortly thereafter, Lugano advised Plaintiffs in writing that Lugano could not find the Co-Owned Diamonds described in the 2nd Contract and 3rd Contract in its inventory.

## FIRST CLAIM FOR RELIEF
### BREACH OF CONTRACT

43.     Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

44.     Plaintiffs and Defendant entered into valid, binding, and enforceable contracts, namely the 2nd Contract and 3rd Contract.

45.     Plaintiffs complied in full with all material terms of 2nd Contract and 3rd Contract.

46.     By engaging in the actions and inactions complained of herein, Defendant breached the terms of the 2nd Contract and 3rd Contract.

47.     Defendant breached the 2nd Contract and 3rd Contract by, among other things, refusing to repay Plaintiffs their money and interest.

48.     Defendant breached the 2nd Contract and 3rd Contract by, among other things, stating that the Co-Owned Diamonds were in Defendant's possession and ownership at the time the parties entered into the 2nd Contract and 3rd Contract, which was untrue.

49.     Defendant breached the 2nd Contract and 3rd Contract by, among other things, either forging GIA certificates for the Co-Owned Diamonds or providing the certificates of other unrelated diamonds to Plaintiffs in order to induce Plaintiffs to enter into the 2nd Contract and 3rd Contract.

50.     Defendant breached the 2nd Contract and 3rd Contract by, among other things, falsely stating that Defendant would market and sell the Co-Owned Diamonds thereafter.

51.     Defendant further breached the 2nd Contract and 3rd Contract by, among other

HOWARD & HOWARD ATTORNEYS PLLC

7

1  things, repeatedly intentionally lying to Plaintiffs, including as recently as May 2025, that the Co-
2  Owned Diamonds were in Defendant's possession.

3      52.    As a direct and proximate result of Defendant's breach of the 2nd Contract and 3rd
4  Contract, Plaintiffs have been and will be damaged in an amount in excess of $75,000.

5      53.    As a direct and proximate result of Defendant's breach of the 2nd Contract and 3rd
6  Contract, Plaintiffs have been required to retain the services of attorneys to prosecute this action
7  and are therefore entitled to recover their attorneys' fees and costs.

**SECOND CLAIM FOR RELIEF**
**TORTIOUS BREACH OF THE IMPLIED COVENANT OF**
**GOOD FAITH AND FAIR DEALING**

10     54.    Plaintiffs repeat and reallege each and every allegation contained in the foregoing
11  paragraphs as though fully set forth herein.

12     55.    Every contract carries an implied covenant of good faith and fair dealing.

13     56.    The 2nd Contract and 3rd Contract between Plaintiffs and Defendant carry with
14  them the implied covenant of good faith and fair dealing.

15     57.    A special relationship of trust existed between Plaintiffs and Lugano by virtue of
16  the fact that Ferder was at all times acting on behalf of Lugano as its President and CEO.

17     58.    Plaintiffs fulfilled all of their duties and obligations with respect to the terms and
18  conditions contained within the 2nd Contract and 3rd Contract.

19     59.    Defendant deliberately breached the implied covenant of good faith and fair
20  dealing by engaging in the actions and inactions complained of herein.

21     60.    As a direct and proximate result of Defendant's actions and inactions constituting
22  a breach of the implied covenant of good faith and fair dealing, Plaintiffs have been and will be
23  damaged in an amount in excess of $75,000.

24     61.    As a direct and proximate result of Defendant's breach of the 2nd Contract and 3rd
25  Contract, Plaintiffs have been required to retain the services of attorneys to prosecute this action
26  and are therefore entitled to recover their attorneys' fees and costs.

27     62.    Defendant committed the acts complained of herein with oppression or malice, and
28  in conscious and deliberate disregarded to Plaintiffs' rights, entitling Plaintiffs to an award of

HOWARD & HOWARD ATTORNEYS PLLC

8

punitive damages in an amount to be determined at the time of trial in this matter.

### THIRD CLAIM FOR RELIEF
#### UNJUST ENRICHMENT

63.    Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

64.    In wiring millions of dollars in funds to Defendant, Plaintiffs conferred a valuable benefit to Defendant, which benefit Defendant appreciated.

65.    Defendant accepted and retained the benefit under the circumstances where it would be inequitable for them to do so without payment of value for the same.

66.    As a direct and proximate result of Defendant's actions and inactions, Plaintiffs have been and will be damaged in an amount in excess of $75,000.

67.    As a direct and proximate result of Defendant's breach of the 2nd Contract and 3rd Contract, Plaintiffs have been required to retain the services of attorneys to prosecute this action and are therefore entitled to recover their attorneys' fees and costs.

### FOURTH CLAIM FOR RELIEF
#### FRAUD

68.    Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

69.    Defendant made numerous misrepresentations to Plaintiffs in inducing Plaintiffs to enter into and perform under the 2nd Contract and 3rd Contract.

70.    When the parties entered into the 2nd Contract and 3rd Contract, Defendant delivered forged GIA certificates or the certificates of other unrelated diamonds to Plaintiffs.

71.    When the parties entered into the 2nd Contract and 3rd Contract, Defendant falsely stated to Plaintiffs that Defendant would market and sell the Co-Owned Diamonds thereafter and split the proceeds with Plaintiffs, when Defendant had no intention of doing so.

72.    From the time that the parties entered into the 2nd Contract and 3rd Contract until May 2025, Defendant repeatedly lied to Plaintiffs by telling them that the Co-Owned Diamonds listed in the 2nd Contract and 3rd Contract remained in Defendant's possession, custody and control.

HOWARD & HOWARD ATTORNEYS PLLC

73. At the time each misrepresentation listed above was made, Defendant knew it was false, or made it recklessly without regard for the truth.

74. At the time each misrepresentation listed above was made, Defendant intended for Plaintiffs to rely upon each false representation.

75. Plaintiffs reasonably relied on Defendant's misrepresentations in entering into the 2nd Contract and 3rd Contract and performing thereunder, including wiring Defendant millions of dollars.

76. As a direct, actual and proximate cause of Defendant's actions, Plaintiffs have been damaged in an amount in excess of $75,000, plus interest thereon.

77. Plaintiffs have been required to retain the services of attorneys to pursue the foregoing claim for relief, and have been further damaged thereby, and therefore are entitled to recover their attorneys' fees and costs.

78. Defendant committed the acts complained of herein with oppression or malice, and in conscious and deliberate disregarded to Plaintiffs' rights, entitling Plaintiffs to an award of punitive damages in an amount to be determined at the time of trial in this matter.

///
///
///
///
///
///
///
///
///
///
///
///
///

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendant as follows:

1.    For a judgment in favor of Plaintiffs and against Defendant on all claims for relief asserted herein;

2.    For compensatory, incidental and consequential damages in an amount in excess of $75,000;

3.    For a finding that Defendant's actions were intentional, willful and malicious, and that Plaintiffs are entitled to punitive and exemplary damages;

4.    For pre-judgment and post-judgment interest on all amounts due, at the highest rate permitted pursuant to applicable law;

5.    For an award of attorneys' fees and costs incurred in this action; and

6.    For such other and further relief as this Court deems just and proper.


DATED this 24th day of June, 2025            HOWARD & HOWARD ATTORNEYS PLLC

By: */s/ Mark J. Gardberg*
    Mark J. Gardberg, Esq.
    Robert L. Rosenthal, Esq.
    3800 Howard Hughes Parkway, Suite 1000
    Las Vegas, Nevada 89169
    *Attorneys for Plaintiffs*

HOWARD & HOWARD ATTORNEYS PLLC